**2010 BNH 006**          **Note:   This is an unreported opinion.  Refer to LBR 1050-1 regarding citation.**
_____

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEW HAMPSHIRE

In re:                                                          Bk. No. 08-12598-JMD
                                                                Chapter 7

Charles Nelson Stanton and
Susan Mary Stanton,
                      Debtors


Harold Lassonde,
                      Plaintiff

v.                                                              Adv. No. 08-1162-JMD

Charles Nelson Stanton and
Susan Mary Stanton,
                      Defendants

*John L. Riff, IV*                          *Grenville Clark, III*
*Law Office of John Riff*                   *Gray, Wendell & Clark, PC*
*Colebrook, New Hampshire*                  *Manchester, New Hampshire*
*Attorney for Plaintiff*                    *Attorney for Debtors/Defendants*

*Michael S. Askenaizer*
*Law Offices of Michael S. Askenaizer*
*Nashua, New Hampshire*
*Attorney for Plaintiff*

## MEMORANDUM OPINION

## I.  INTRODUCTION

The Court has before it Harold Lassonde's motion for summary judgment (Doc. No. 9)

(the "Motion").  Lassonde filed this adversary proceeding against Charles and Susan Stanton (the

"Debtors"), seeking either to deny the Debtors' discharge under § 727 of the Bankruptcy Code[1] or to declare a $52,824.62 judgment debt nondischargeable under § 523 based on the Debtors' conduct in a dispute with Lassonde after they hired him to build a log home in Pittsburg, New Hampshire.

This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a) and the "Standing Order of Referral of Title 11 Proceedings to the United States Bankruptcy Court for the District of New Hampshire," dated January 18, 1994 (DiClerico, C.J.).  This is a core proceeding in accordance with 28 U.S.C. § 157(b).

## II.  BACKGROUND

Nearly all the allegations in Lassonde's complaint formed the basis for a state court lawsuit that Lassonde brought against the Debtors in Coos County Superior Court, which was already litigated to judgment and appealed to the New Hampshire Supreme Court.  See Lassonde v. Stanton, 157 N.H. 582 (2008).  Here, the Court only discusses the undisputed summary judgment facts from the record necessary to decide the Motion.[2]

In May 2005, the Debtors signed a contract with Lassonde to have him build a log home on their land in Pittsburgh for the cost of $192,350.79.  The contract required Lassonde to install a foundation, septic system and well, assemble the log home kit, and complete interior work. The Debtors had to pay Lassonde in installments as the work progressed, with a final payment

---

[1]  In this opinion the terms "Bankruptcy Code," "section" and "§" refer to title 11 of United States Code, 11 U.S.C. § 101 et seq., as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Pub. L. No. 109-8.

[2]  The summary judgment record from Lassonde consists of the Motion and numerous exhibits. The Debtors filed only an objection, and they did not include any other evidence in support.

due five days after the work was substantially completed.  Construction was supposed to start on June 1 with substantial completion by December 1.  Due to difficulties experienced by the Debtors in obtaining financing, the start date was delayed.  Once Lassonde started, the work progressed smoothly and the home was weather-tight by late September, although some of the lumber sitting at the work site was exposed to seasonal rains.  During the construction process, the Debtors caused some delay by requesting changes to a special sound system as it was being installed by a subcontractor; the home's interior could not be closed until the sound system wiring was complete.  By late December, the home was ready for occupancy.  Before moving in, however, the Debtors sent several aggressively-worded e-mails to Lassonde complaining about the work done by some of the subcontractors.  In mid-January they then sent a list of items they thought needed more work.  Lassonde returned to the property intending to address the items but apparently did not complete all of them because he considered some unnecessary or not within the parties' contract.

On January 3, 2006, before the Debtors moved into their home, a final inspection of the property was conducted on behalf of the construction lender.  The inspector then issued a Satisfactory Completion Certificate, which stated that the property was found to be complete "per plan specification."  A week later, on January 10, the Debtors executed an Owner Mechanic's Lien Affidavit, which stated that all work for which the final $36,550.79 disbursement was to be made "has been completed and that the contractors and suppliers of materials or labor have been paid for their share of such work and all previous work, or will be paid, out of such disbursement."[3]  Based on that affidavit and the final inspection, GMAC

---

[3] Pl.'s Ex. 3.  All references to exhibits are to those attached to the Motion.

Mortgage, the construction lender, then issued a $36,550.79 check to the Debtors, with the intention that the amount would pay the remaining balance due under the contract.[4]  The Debtors refused to pay Lassonde the final $36,550.79 due under their contract, however.  They claimed that they did not owe Lassonde any money because they had to incur costs to fix his failure to complete the home in a timely and workmanlike manner.

After the Debtors moved in during the second week of January 2006, they began to notice water stains.  Several inspections later, the Debtors realized they had a mold problem in the home that would require repair work to the ceilings, floors, and walls.  The Debtors blamed the mold on excess moisture from the logs because they were exposed to rain during the summer of 2005 while construction was ongoing.  But the Superior Court made findings that the evidence showed that the moisture accumulation within the house was "directly attributable to the [Debtors'] failure to install proper ventilation, compounded by their failure to have dehumidifying equipment in the house."  The Debtors were also advised to install a large ventilation fan in the master bathroom and to install appropriate and reasonable ventilation to other interior portions of the house, but they refused.

Shortly after the mold problem surfaced, the Debtors began complaining about Lassonde's work to several people, including subcontractors that worked with Lassonde, at least two potential customers of Lassonde's business, and to attendees of a meeting of the Pittsburg Board of Selectmen, where they reported that Lassonde had built a "sickly house" and that they were suing him.  They also told several people that their new house was so defective that it was

---

[4]  See Pl.'s Ex. 4.

condemned and had to be torn down.  Apparently the Debtors did not deny making these statements but claimed they were truthful and not made with malice.

## III. DISCUSSION

Lassonde seeks summary judgment against the Debtors on all eight counts of his complaint.  Under Rule 56(c) of the Federal Rules of Civil Procedure, made applicable here by Federal Rule of Bankruptcy Procedure 7056, a summary judgment motion should be granted only when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law."  Courts faced with a motion for summary judgment should read the record "in the light most flattering to the nonmovant and indulg[e] all reasonable inferences in that party's favor."  Maldonado-Denis v. Castillo-Rodriguez, 23 F.2d 576, 581 (1st Cir. 1994).

> [T]he role of summary judgment is to "pierce the pleadings" and to determine whether there is a need for trial.  Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir. 1990).  The moving party must "put the ball in play" by averring the absence of any genuine issue of fact.  Id. at 48.  Once the ball is in play, however, the non-moving party must come forward with competent evidence to rebut the assertion of the moving party.  Id.; see also Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).  Not every factual discrepancy is sufficient to defeat a motion for summary judgment.  "[E]vidence that 'is merely colorable or is not significantly probative'" cannot defeat the motion.  Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986)).

Evans Cabinet Corp. v. Kitchen Int'l, Inc., No. 08-2579, 2010 WL 366740, at *4 (1st Cir. Feb. 3, 2010).  If the movant makes a preliminary showing that no genuine issue of material fact exists, the nonmovant must produce suitable evidence to establish a trialworthy issue.  Clifford v. Barnhart, 449 F.3d 276, 280 (1st Cir. 2006).  Otherwise, the nonmovant's failure to produce

5

evidence on essential factual elements on which it would bear the burden of proof at trial requires summary judgment for the movant.  Id.

Before addressing the merits, the Court pauses to note that many of the counts in Lassonde's complaint contain the element of intent.  Normally, "where motive and intent play a leading role, summary judgment should not be granted."  Noonan v. Staples, Inc., 556 F.3d 20, 31 (1st Cir. 2009); see also Aponte-Santiago v. Lopez-Rivera, 957 F.2d 40, 41 (1st Cir. 1992) ("The summary judgment standard remains particularly rigorous when the disputed issue turns on a question of motive or intent.").  But "[e]ven in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation," or no evidence at all.  Meuser v. Fed. Express Corp., 564 F.3d 507, 515 (1st Cir. 2009).

Lassonde argues that certain elements in his complaint were already decided by the Coos County Superior Court and New Hampshire Supreme Court, and therefore this Court should apply collateral estoppel to bar relitigation on those matters.  Notably, the Debtors appear to concede this point, at least as to Counts I through IV of Lassonde's complaint.[5]  The ordinary rules of collateral estoppel, or issue preclusion, apply to most actions in bankruptcy court, including § 523(a) claims to except debts from discharge.  Grogan v. Garner, 498 U.S. 279, 284 n.11 (1991); McCrory v. Spigel (In re Spigel), 260 F.3d 27, 33 (1st Cir. 2001).  Bankruptcy courts look to state law to determine the preclusive effect of a prior state court judgment.  New Hampshire Motor Transp. Ass'n v. Town of Plaistow, 67 F.3d 326, 328 (1st Cir. 1995).

---

[5]  See Def.'s Objection, at 2-3 (Doc. No. 16).

6

Under New Hampshire law, for collateral estoppel to apply, three conditions must be satisfied: (1) the issue subject to estoppel must be identical in each action; (2) the first action must have resolved the issue finally on the merits; and (3) the party to be estopped must have appeared as a party in the first action, or have been in privity within someone who did.  Stewart v. Bader, 154 N.H. 75, 80-81 (2006).  Those elements are part of a more general requirement, that a party against whom estoppel is pleaded must have had a full and fair opportunity to litigate the issue or fact in question.  Id.  The application and effect of any collateral estoppel arguments raised by the parties shall be discussed under each count.

Lassonde's complaint seeks relief under either § 523(a) or § 727.  Exceptions to discharge under § 523(a) are construed narrowly and in favor of the debtor.  Palmacci v. Umpierrez, 121 F.3d 781, 786 (1st Cir. 1997).  The creditor must show that his claim "comes squarely within an exception" in § 523(a).  Id.  Objections to discharge under § 727 are likewise construed narrowly, and the right to a discharge is construed liberally in favor of the debtor.  Boroff v. Tully (In re Tully), 818 F.2d 106, 110 (1st Cir. 1987).  The reasons for denying a discharge must be real and substantial, not merely technical and conjectural.  Id.  The Court addresses each of Lassonde's counts in turn.

### A.  Count I – § 523(a)(2)(A) – Money obtained by false pretenses, a false representation, or actual fraud

In Count I, Lassonde alleges that the Debtors committed fraud under § 523(a)(2)(A) when they executed the Owner's Mechanic's Lien Affidavit to get the final check from GMAC Mortgage because they filed a false affidavit by affirming under oath that they had paid (or would pay) Lassonde, but they never did.  As evidence of their fraud, Lassonde points to the language of the affidavit and testimony during the Superior Court trial from Cindy Dorman, who

7

notarized the affidavit, that, immediately after executing the affidavit, Mr. Stanton said that

Lassonde "would never see [the] last check."[6]  Lassonde also notes that the Debtors acted

consistent with that statement because they never gave the check to him and instead kept the

money and spent it for their own purposes.  In its post-trial order, the Superior Court made

findings that the Debtors "retained the money for their own purposes" and that after receiving

the last check, they "embarked on a course of conduct designed to avoid paying the balance due

on the contract and the extras agreed to."[7]

### 1.  Section 523(a)(2)(A)

Section 523(a)(2)(A) prevents debtors from discharging any debt

> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
> > (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

11 U.S.C. § 523(a)(2)(A).  Creditors have three avenues for nondischargeability claims under

§ 523(a)(2)(A)—false pretenses, a false representation, or actual fraud.  Many courts, however,

treat the phrases as "functionally equivalent."  Backlund v. Stanley-Snow (In re Stanley-Snow),

405 B.R. 11, 21 (B.A.P. 1st Cir. 2009).  Actual fraud consists of something said, done, or

omitted with the design of perpetrating what is known to be a cheat or deception against

someone else.  Id.  In contrast, false representations or false pretenses under § 523(a)(2)(A),

require a creditor to show that: (1) the debtor made a knowingly false representation or one made

in reckless disregard of the truth; (2) the debtor intended to deceive, i.e., scienter; (3) the debtor

intended to induce the creditor to rely upon the false statement; (4) the creditor actually relied

---

[6]  Pl.'s Ex. 5.

[7]  Pl.'s Ex. 1, at 9.

upon the misrepresentation; (5) the creditor's reliance was justifiable; and (6) the reliance on the false statement caused damage.  Spigel, 260 F.3d at 32; Palmacci, 121 F.3d at 786.  Notably, however, each type—actual fraud, false representations, and false pretenses—requires a direct link between the alleged fraud and the creation of the debt.  Spigel, 260 F.3d at 32 n.7.  The standard of proof for each element of a § 523(a) claim is by a preponderance of the evidence. Grogan, 498 U.S. at 291.

### 2. Analysis

Here, the Debtors' false mechanic's lien affidavit to GMAC Mortgage and Mr. Stanton's statement that Lassonde would never see the last check seem to meet the first two elements of the Palmacci § 523(a)(2)(A) test.  False affidavits by definition involve false representations to another because the affiant swears under oath that the facts written down in the affidavit are true. See Black's Law Dictionary 66 (9th ed. 2009).  As such, other courts have held or noted that false affidavits can meet the requirements of actual fraud or false representations under § 523(a)(2)(A).  See  Lawyers Title Ins. Corp. v. Dallam (In re Dallam), 850 F.2d 446 (8th Cir. 1988); Cripe v. Mathis (In re Mathis), 360 B.R. 662, 667 (Bankr. C.D. Ill. 2006); Jackowiak v. Hardin Paving Co. (In re Jackowiak), No. 09-A-96013, 2009 WL 3930217 (Bankr. N.D. Ill Nov. 18, 2009).

When the Debtors signed the mechanic's lien affidavit to GMAC Mortgage they swore that all the work for the requested disbursement was complete, that all contractors and material suppliers "have been paid . . . or will be paid" from the disbursement.  Although Mr. Stanton's statement that Lassonde would never see the last check apparently came after the signing of the affidavit, it was nearly contemporaneous and immediately followed the affidavit's execution.

That is sufficient to meet the first two elements—that he knowingly made a false representation and that he intended to deceive.  See Williamson v. Busconi, 87 F.3d 602, 603 (1st Cir. 1996) ("'subsequent conduct may reflect back to the promisor's state of mind and thus may be considered in ascertaining whether there was fraudulent intent' at the time the promise was made").

While the evidence supports the first two elements of the § 523(a)(2)(A), the record does not support a finding that the Debtors induced Lassonde to rely on the false affidavit or that Lassonde actually relied on the affidavit.  There must be a direct link between the fraud and the creation of the debt.  See Spigel, 260 F.3d at 32 (the last four elements of the Palmacci test require that the claim "arise as a direct result of the debtor's fraud").  The debt in this count arose from the performance of work under the original contract, not from the allegedly false affidavit.

Collateral estoppel does not provide the required link.  Lassonde's claim in state court was a plea of assumpsit (or breach of contract).  A plea of assumpsit or breach of contract action does not necessarily require proof of fraud or anything like it, so the issue before the state court was not identical.  Likewise, the state court made no findings that Lassonde relied on the affidavit, only that the Stantons "embarked on a course of conduct designed to avoid paying the balance due on the contract and the extras agreed to."

Finally, the New Hampshire mechanic's lien statute does not require that Lassonde receive any notice of the Stantons' affidavit to GMAC Mortgage.  See N.H. Rev. Stat. Ann. § 447 (2009).  The summary judgment record does not establish that he even saw the affidavit at or near the time it was delivered to GMAC.  Thus, he could not have relied on it.  Moreover, the

false affidavit did not create the debt to Lassonde here.  The Stantons owed a debt to Lassonde whether or not they received the final disbursement from GMAC Mortgage because, if the Stantons did not receive the final check, they would still owe Lassonde for the work he performed and Lassonde would still have a lien on their property.  See N.H. Rev. Stat. Ann. § 447:2.

Since the summary judgment record does not contain any evidence on the reliance portion of the last four elements of the Palmacci test, summary judgment on Count I is denied.

### B.  Count II – § 523(a)(4)(A) – Fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny

In Count II, Lassonde alleges that the Debtors committed fraud or defalcation while acting in a fiduciary capacity under § 523(a)(4)(A) because, when they received the final check from GMAC Mortgage, they expressly assumed a fiduciary capacity over the funds by telling Lassonde they had placed the money in escrow.  Lassonde also argues that the Debtors further breached that fiduciary duty by failing to account for their expenditures when they later used almost all of the $36,550.79 for their own purposes.

#### 1.  Section 523(a)(4)

Section 523(a)(4) prevents debtors from discharging any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny."  The statute therefore provides four types of claims: (1) fraud while acting in a fiduciary capacity; (2) defalcation while acting in a fiduciary capacity; (3) embezzlement; or (4) larceny.  Again, the standard of proof is by a preponderance of the evidence.  Grogan, 498 U.S. at 281.  Lassonde alleges that the Debtors committed fraud while acting in a fiduciary capacity, defalcation while acting in a fiduciary capacity, and larceny.

### a.  Fraud or defalcation while acting in a fiduciary capacity

Although fraud or defalcation under § 523(a)(4) represent two different grounds for excepting a debt from discharge based on different levels of intent and fault, see Rutanen v. Baylis (In re Baylis), 313 F.3d 9, 20 (1st Cir. 2002), both require the same type of fiduciary capacity.  The fiduciary capacity required under § 523(a)(4) requires an express or technical trust, not an equitable or implied trust arising under applicable nonbankruptcy law due to the debtor's conduct.  Davis v. Aetna Acceptance Co., 293 U.S. 328, 333 (1934); BAMCO 18 v. Reeves (In re Reeves), 124 B.R. 5 (Bankr. D.N.H. 1990). While the First Circuit expressed some doubt in Baylis on whether this is still true, it never addressed whether a fiduciary capacity arises outside of an express trust.  See Baylis, 313 F.3d at 17 n.3.

The term "fiduciary" in § 523(a)(4) "is limited to the class of fiduciaries including trustees of specific written declarations of trusts, guardians, administrators, executors, or public officers."  Reeves, 124 B.R. at 9.  And the term only applies to express trusts in which "the debtor either expressly signified his intention at the outset of the transaction, or was clearly put on notice by some document in existence at the outset" explaining that he was undertaking the special responsibilities of a trustee.  Id. at 10; see also Reilly v. Beeman (In re Beeman), 225 B.R. 522, 525 (Bankr. D.N.H. 1998); Office of Public Guardian v. Messineo (In re Messineo), 192 B.R. 597, 601 (Bankr. D.N.H. 1996).

In addition, when considering whether the debtor is a fiduciary, federal bankruptcy law rather than state law is determinative, but state law is still relevant to the inquiry.  Ducey v. Doherty (In re Ducey), 160 B.R. 465, 469 (Bankr. D.N.H. 1993).  So although the federal "fiduciary" definition is narrower than in state law because the federal definition only includes

express and technical trusts and most states also recognize constructive and implied trusts, state law still governs whether those technical or express trusts exist.  Id. at 469.

The summary judgment record contains no evidence that the Debtors had any fiduciary capacity under a written declaration of trust or other express trust instrument.  Lassonde only argues that Mr. Stanton told him that he placed the final construction check in "escrow."  Technical language or formalities are not necessary to create an express trust in New Hampshire.  Hanley v. Notinger (In re Charlie's Quality Carpentry, LLC), 2003 BNH 025, at 8.  And express trusts may include oral trusts.  However, the intent of the declarant and the terms of an oral trust may be established only by clear and convincing evidence.  See N.H. Rev. Stat. Ann. § 564-B:4-407.  The summary judgement record does not contain such evidence.

Collateral estoppel does not help Lassonde.  The state court made no findings about a fiduciary capacity and the parties did not raise or litigate that issue.  The parties only disputed whether the Debtors breached the contract, how the Debtors spent the funds in escrow, and why Lassonde was entitled to it.  Thus, the issues are not identical to the elements in this count.

### b.  Larceny

Larceny under § 523(a)(4) is defined by federal common law.  Sandow v. Burke (In re Burke), 416 B.R. 136, 145 (Bankr. E.D. Pa. 2009).  Larceny is the (1) wrongful taking of (2) property (3) of another (4) without the owner's consent (5) with intent to convert the property or deprive the possessor of it permanently.  Bauer v. Colokathis (In re Colokathis), 417 B.R. 150, 161 (Bankr. D. Mass. 2009).  While embezzlement involves an unlawful appropriation after the property was entrusted to the debtor's care, larceny involves an appropriation that was unlawful at the outset.  4 Lawrence P. King, Collier on Bankruptcy ¶ 523.10[2], at 523-77 (16th ed. 2009).

Fraudulent intent at the outset is essential to a finding of larceny, and it can be inferred from the circumstances.  DirecTV, Inc. v. Figler (In re Figler), 407 B.R. 181, 193 (Bankr. W.D. Pa. 2009).

The Debtors' conduct here when signing the mechanic's lien affidavit shows their fraudulent intent at the time they received the money from GMAC because Mr. Stanton said that Lassonde would never see the last check at the time he signed the affidavit.  But the record does not contain evidence that the money was Lassonde's property at the outset.  Larceny requires the taking of property of another.  See Colokathis, 417 B.R. at 161 (debtor's felony convictions for identity theft and using another's credit card was larceny under § 523(a)(4)); see also Ormsby v. First Am. Title Co. of Nevada (In re Ormsby), Nos. 08-15572, 08-15573, 2010 WL 47560, at *3 (9th Cir. Jan. 8, 2010) (misappropriating title plants from another title company); Figler, 407 B.R. at 193 (pirating satellite TV).

Here, however, the Debtors lawfully received the money from GMAC Mortgage under their construction loan contract with GMAC.  They may have received the payment subject to a duty to distribute the funds to Lassonde as the contractor, but the Debtors initial receipt of the money was lawful.  "No larceny can exist for the purposes of section 523(a)(4) where a debtor lawfully obtained funds pursuant to contract."  Smith Mountain Bldg. Supply, LLC v. Shreve (In re Shreve), 386 B.R. 602, 606 (Bankr. W.D. Va. 2008) (debtor's initial receipt of funds from home construction projects was not larceny, even though, as a general contractor, he had a duty to use the funds to pay subcontractors and he falsely executed mechanic's lien waivers saying the materialman and laborers were paid).  The affidavit itself does not establish Lassonde's ownership of the funds.  The Debtors had a right to possess the funds, at least initially.  That they

14

decided not to pay Lassonde bears on their contractual liability under the home construction

contract, but it does not establish larceny.

Once more, collateral estoppel does not help. The state court's findings only focused on

whether the Debtors' use of the money after they received it from GMAC was wrong based on

the parties' contract. The state court did not, however, address who rightfully owned the money

at the time it was disbursed to the Debtors, only that the Debtors wrongfully withheld the money

based on the terms of the contract.

In sum, because the summary judgment record does not establish the Debtors' fiduciary

capacity or that the Debtors' receipt of money was larceny, summary judgment on Count II is

denied.

### C. Count III – § 727(a)(3) and (a)(5) – Failure to keep or preserve records and failure to explain a loss of assets

In Count III, Lassonde alleges that the Debtors should be denied a discharge under

§ 727(a)(3) because Mr. Stanton is the sole shareholder and president of Paper Rite, Inc. and

knows virtually nothing about its finances. Lassonde also alleges that the Debtors should be

denied a discharge under § 727(a)(5) by failing to preserve assets and failing to explain the loss

of funds because they could not explain how they spent the money from the last construction

loan check.[8]

"[T]he successful functioning of the bankruptcy [system] hinges both upon the

bankrupt's veracity and his willingness to make a full disclosure. Neither the trustee nor the

creditors should be required to engage in a laborious tug-of-war to drag the simple truth into the

---

[8] Lassonde's memo of law and statement of facts in support of this Count seem to treat
§ 727(a)(3) and (a)(5) as functionally equivalent. But each section requires a different inquiry, so the
Court will treat Lassonde's arguments accordingly.

glare of daylight."  Boroff v. Tully (In re Tully), 818 F.2d 106, 110 (1st Cir. 1987) (quotations

and citations omitted).  Indeed, "the very purpose of certain sections of the law, like [§ 727], is to

make certain that those who seek the shelter of the bankruptcy code do not plan fast and loose

with their assets or with the reality of their affairs."  Id.

### 1.  Section 727(a)(3)

Section 727(a)(3) requires the Court to deny the debtor a discharge if

> the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or
> preserve any recorded information, including books, documents, records, and
> papers, from which the debtor's financial condition or business transactions might
> be ascertained, unless such act or failure to act was justified under all of the
> circumstances of the case.

11 U.S.C. § 727(a)(3).  The statute applies to any recorded information, so it applies equally to

paper and electronic records (i.e., computers) from which the debtor's financial condition or

business transactions might be ascertained.  6 Collier on Bankruptcy ¶ 727.03[1], at 727-30.

The standard for § 727(a)(3) in each case is a question of reasonableness in the particular

circumstances.  Razzaboni v. Schifano (In re Schifano), 378 F.3d 60, 68 (1st Cir. 2004).

Complete disclosure is the price for discharge, and the debtor who does not keep adequate books

and records to provide that disclosure should be denied a discharge.  Id.  So, "while a debtor may

justify his failure to keep records in some cases, a discharge may granted only if the debtor

presents an accurate and complete account of his financial affairs."  Id.  The creditor bears the

initial burden of proof, Fed. R. Bankr. P. 4005, but, once established, the burden shifts to the

debtor to show that the failure to maintain adequate records was justified under the

circumstances.  Schifano, 378 F.3d at 70.

16

Here, Lassonde points to Mr. Stanton's April 23, 2009 Rule 2004 examination as evidence of his failure to maintain or preserve records.  The evidence provided generally consists of snippets of the deposition transcript in which Mr. Stanton was asked about his role as sole shareholder and president of Paper Rite, Inc.[9]  Among other statements, Mr. Stanton said that, without him, the company would die.  Also, when questioned about its finances, Mr. Stanton said that he does not handle them.  He said that his bookkeeper runs the money and that she will sometimes write checks to "cash" without any notation to explain what the money is for.  Lassonde does not point to anything else about Paper Rite, Inc. or Mr. Stanton's conduct with that business's books, records, or information.  The summary judgment record on this count fails to demonstrate that Mr. Stanton failed to keep, preserve, or maintain adequate records from which his financial condition could be ascertained.

## 2.  Section 727(a)(5)

Section 727(a)(5) requires the Court to deny the debtor a discharge if "the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities."  This section does not require fraudulent intent.  Nof v. Gannon (In re Gannon), 173 B.R. 313, 317 (Bankr. S.D.N.Y. 1994).  And the Court only has to decide whether the explanation satisfactorily explains what happened to the assets, not whether what happened to the assets was proper.  Francis v. Riso (In re Riso), 74 B.R. 750, 760 (Bankr. D.N.H. 1987).  The debtor's explanation though, "must satisfy the court of his business like conduct and good faith" with respect to the assets.  Gannon,

---

[9]  See Pl.'s Exs. 16-20.

17

173 B.R. at 317.  It requires "much more in the way of explanation than vague generalities."  Id.

(quoting Sperling v. Cudahy Packing Co. (In re Sperling), 72 F.2d 259, 261 (2d Cir. 1934)).

To support his claim under this section, Lassonde primarily points to Mr. Stanton's trial

testimony in the state court action about what he did with the final $36,550.79 in construction

loan funds after getting them from GMAC Mortgage, and his decision to set up an escrow

account to hold the money for Lassonde.[10]  Mr. Stanton's responses to questions on this issue are

telling.

In the state court trial, when he was questioned about how the Debtors spent the escrow

money, Mr. Stanton knew that the fight over those funds was the major issue in the litigation.

Yet he failed to come up with any plausibly adequate responses to how the money was spent.  He

admitted to spending all the money but says he spent it on "remediation."  Apparently this meant

fixing what he thought was wrong with the home that Lassonde built.  Asked for more detail

about the remediations, Mr. Stanton was evasive.  He said it would "be impossible or very

difficult" to explain all the work that had to be done because it was a great amount of work over

a great amount of time (about a year).  He surmised that you would need a "CPA firm working

on that forty hours a week" to figure out where the money went.  Mr. Stanton's responses are

exactly the type of "vague generalities" that do not meet the explanation requirement under

§ 727(a)(5).  It does not matter whether Debtors spent the escrow funds properly (although the

Superior Court said they used the funds "for their own purposes"), Mr. Stanton's explanations

still do not satisfactorily explain what happened to the funds.

---

[10]  See Pl.'s Ex. 6.

Moreover, Mr. Stanton would be bound from disputing his testimony in state court based on collateral estoppel. The issue involved is the same under § 727(a)(5) and the breach of contract claim: what did the Debtors do with the escrow funds?

The summary judgment record establishes that the Stantons failed to adequately explain the disposition of the final disbursement from GMAC and contains no explanation, disputed or otherwise, regarding the loss of those funds as required under § 727(a)(5). Thus, summary judgment on Count III is granted.

### D.  Count IV – § 523(a)(6) – Willful and malicious injury

In Count IV, Lassonde alleges that a portion of the Debtors' judgment debt for defamation in state court—$10,000—should be excepted from discharge under § 523(a)(6) because it was a willful and malicious injury to him. For this count, Lassonde primarily relies on the collateral estoppel effect of the prior state court litigation. The Superior Court made specific findings against the Debtors for defamation and awarded $10,000 in damages.[11]  And the New Hampshire Supreme Court affirmed that ruling.  See Lassonde, 157 N.H. at 589-92.  The Debtors counter that nothing in the state court record establishes that they acted "willfully and maliciously" in making defamatory remarks about Lassonde and his business to others.  In Superior Court, the Debtors conceded that they intended to injure Lassonde's business with their statements.  Their defense though was that their statements were true.  The Superior Court found that their reliance on truth as a defense was misplaced and that they acted with malice in making the statements.

---

[11]  See Pl.'s Ex. 1, at 10-13.

19

Section 523(a)(6) prevents debtors from discharging any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." Debts from recklessly or negligently inflicted injuries do not fall within § 523(a)(6); instead, actual intent to cause the injury is required. Kawaauhau v. Geiger, 523 U.S. 57 (1998). "Willful" means deliberate or intentional as opposed to inadvertent or negligent. Langan v. Evers (In re Evers), 212 B.R. 945, 948 (Bankr. E.D. Wisc. 1997). "Malice" means that the injury is wrongful and committed "without just cause or excuse, in conscious disregard of one's duty. Printy v. Dean Witter Reynolds, 110 F.3d 853, 859 (1st Cir. 1997).

The collateral estoppel effect of the prior state court rulings will preclude litigation here only if the issues were identical.[12] Defamation under New Hampshire law requires the plaintiff to prove that the defendant failed to exercise reasonable care in publishing a false and defamatory statement of fact about the plaintiff to a third party. Pierson v. Hubbard, 147 N.H. 760, 763 (2002). A § 523(a)(6) action requires the creditor to prove (1) the debtor acted with willfullness, (2) the debtor acted with malice, and (3) an injury.

In Superior Court, the Debtors defended by asserting that Lassonde was a public figure (or limited-purpose public figure) for defamation purposes and that he should have to prove actual malice. The Superior Court rejected that argument. On appeal, the New Hampshire Supreme Court affirmed. It held that Lassonde was a private figure and that he was entitled to damages on his defamation claim without showing the Debtors' actual malice. See Lassonde, 157 N.H. at 592. Importantly, although Lassonde did not have to show actual malice based on

---

[12] Neither party disputes that the other elements for collateral estoppel are met here: the parties are the same in both actions, the first action was resolved finally on the merits, and the parties had a full and fair opportunity to litigate the issues.

the Debtors' defense, the Superior Court made specific findings that Lassonde proved actual malice.[13]

Based on the prior state court rulings, the Court finds that Lassonde's defamation action and his § 523(a)(6) action involve identical issues that cannot be relitigated based on collateral estoppel.  First, in the defamation action, the Debtors did not deny making the statements, so their actions were "willful" because they were intentional and deliberate.  Second, in the defamation action, the Superior Court found that the Debtors acted with actual malice, and the New Hampshire Supreme Court never altered that finding.  Thus, the Debtors' actions were "malicious."  Third, the Superior Court made findings that Lassonde and his reputation were injured.

Accordingly, summary judgment on Count IV is granted.

### E.  Count V – § 523(a)(6) – Willful and malicious injury

In Count V, Lassonde alleges that the Debtors committed a willful and malicious injury under § 523(a)(6) by stripping the log home of almost all appliances and fixtures after he sued them in state court and received attachments on the property.  In particular, Lassonde alleges that the Debtors removed the downstairs toilet, the fireplace, the front door, light fixtures, the built-in sound system, a generator, a built-in ironing board, the downstairs basement door, a utility sink in the garage, some of the window trim, the wood boiler, the refrigerator, and the stove.  After removing the items, Lassonde contends that the Debtors concealed them in a storage unit.  In support, Lassonde offers photos of the log home showing the absence of those various items and what looks like damage to parts of the home, as well as deposition transcripts.

---

[13] See Pl.'s Ex. 1, at 12.

After reviewing the summary judgment record, the Court cannot find evidence to support summary judgment on this count.  Lassonde must show that there is no genuine issue regarding the Debtors' actions as "willful" and "malicious" (and that Lassonde was injured as a result).  Although it appears that Lassonde suffered an economic injury—in that the Debtors' actions decreased the value of the property, thus reducing the potential value of his attachment or lien—the evidence still leaves issues of fact regarding the Debtors' willfulness or maliciousness.  On this point, Lassonde cites Harrold v. Raeder (In re Raeder), 399 B.R. 432 (Bankr. N.D. W.Va. 2009), for the proposition that a debtor's willful and malicious acts may be inferred from the circumstances surrounding the injury.  Even so, based on this record, summary judgment is inappropriate.  The § 523(a)(6) standard requires a showing that a debtor's "willful" act was "a deliberate or intentional injury, not merely a deliberate or intentional act that leads to an injury," which generally requires, as in intentional torts, that the actor "intend the consequences of an act, not simply the act itself."  Geiger, 523 U.S. at 61 (citations and quotations omitted).  The Debtors apparently thought (perhaps erroneously) they could remove the items because it was their personal property.

The summary judgment record does not support a finding that by removing the items the Debtors intended to injure Lassonde.  Lassonde may be able to establish the necessary intent at trial, but the summary judgment record does not do so.  Accordingly, summary judgment on Count V is denied.

### F.  Count VI – § 727(a)(2)(A) – Transfer or removal of property within one year of the bankruptcy petition

In Count VI, Lassonde argues that the Debtors should be denied a discharge under § 727(a)(2)(A) because they tried to transfer, remove, or conceal the items they took from the log

22

home in late 2007 and early 2008, within one year of filing for bankruptcy.  Lassonde alleges

that the Debtors transferred the removed items to a self-storage unit that was rented in someone

else's name.

### 1.  Section 727(a)(2)(A)

Section 727(a)(2)(A) requires the Court to deny the debtor a discharge if

> (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of
> the estate charged with custody of property under this title, has transferred,
> removed, destroyed, mutilated, or concealed, or has permitted to be transferred,
> removed, destroyed, mutilated, or concealed—
> > (A) property of the debtor, within one year before the date of the filing of
> > the petition.

11 U.S.C. § 727(a)(2)(A).  An objector pursuing a § 727(a)(2) claim must show by a

preponderance of the evidence that (1) the debtor transferred, removed, destroyed, mutilated, or

concealed, (2) his or her property, (3) within one year of the petition date, (4) with intent to

hinder, delay or defraud a creditor.  Groman v. Watman (In re Watman), 301 F.3d 3, 7 (1st Cir.

2002).  Lassonde has the burden of establishing these elements.  Fed. R. Bankr. P. 4005.

As for the first element, the First Circuit has noted that bankruptcy law defines "transfer"

broadly to include a transfer of possession, custody, or control, even if there is no transfer of

legal title.  Watman, 301 F.3d at 10.  And as to the intent element, Lassonde must show that the

Debtors acted with actual intent, not constructive intent.  Id. at 8.  "Because a debtor rarely gives

direct evidence of fraudulent intent, . . . intent to defraud a creditor can be proved by

circumstantial evidence.  Marrama v. Citizens Bank (In re Marrama), 445 F.3d 518, 522 (1st Cir.

2006).  The objective indicia of fraudulent intent include:

> (1) insider relationships between the parties; (2) the retention of possession,
> benefit or use of the property in question; (3) the lack or inadequacy of
> consideration for the transfer; (4) the financial condition of the party sought to be

charged both before and after the transaction at issue; (5) the existence or cumulative effect of the pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; (6) the general chronology of the events and transactions under inquiry.

Watman, 301 F.3d at 8.

### 2. Analysis

The parties do not dispute the second element—that the items were the Debtors' property, at least for this count. They also do not dispute the third element—that the transfer, removal, or concealment happened within one year of the Debtors' bankruptcy petition.

The first element is also straightforward. The Debtors "transferred" the items stripped from the log home as courts interpret that term in § 727(a)(2)(A). A "transfer" is interpreted as broadly as possible: "any transfer of an interest in property is a transfer, including a transfer of possession, custody, or control even if there is no transfer of title, because possession, custody, and control are interests in property." Watman, 301 F.3d at 10 (quoting S. Rep. No. 95-989, at 27 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5811). Mr. Stanton admitted in his April 23, 2009 Rule 2004 deposition that he placed the Debtors' personal property, including many of the items stripped from the log home, into a storage unit rented by Melinda Lambert. Although Mr. Stanton paid Lambert for storing the items in the rental unit, Lambert was in possession of those items. Thus, the Debtors transferred possession, custody, or control of the stripped items to Lambert so she could store them.

The fourth and last element of intent is the only real dispute here. The Debtors have not admitted to intending to defraud Lassonde and there is no other direct evidence of intent. Thus, the Court reviews the summary judgment record for circumstantial evidence on intent. The

24

undisputed evidence in the summary judgment record leads the Court to conclude that the Debtors had the requisite intent.

First, shortly after stripping the items from the log home in March 2008, the Debtors placed the items in a storage unit rented by an unrelated third party, Melinda Lambert.  The Debtors paid her in cash to store the items.  The Debtors then failed to initially disclose those items on the original schedule B of their bankruptcy petition.  Not until about two months after this adversary proceeding was filed did the Debtors finally amended their schedule B to include the items in the storage unit.

Second, the Debtors considered the items they stripped from the log home as their property, yet they did not bother to disclose them on schedule B until well after their bankruptcy case was under way and after being sued in the adversary proceeding.  Mr. Stanton was adamant in his Rule 2004 examination that the items were his and not Lassonde's.

> Q:  So, you took all of those? [referring to the stripped items]
> A:  I took what was mine, what I paid for, separate contract.  The builder didn't own them.[14]

So the Debtors can hardly claim ignorance about not initially disclosing the stripped items. Though the Debtors eventually only valued the items at $1,400, that does not excuse the failure to disclose.  In any event, the Debtors seem to view those items as important because they chose to exempt all of them in their amended schedule C.

The Debtors' conduct on this count under § 727(a)(2)(A) bears a close factual relationship to the debtor in Boroff v. Tully (In re Tully), 818 F.2d 106 (1st Cir. 1987).  There, the First Circuit held that the debtor should be denied a discharge under § 727(a)(4)(A) because

---

[14]  Pl.'s Ex. 23.

he neglected to list three significant assets in his original schedules (of which he had full knowledge), omitted two of those assets in the first amended set of schedules, and only listed some of the other assets in a second amended set of schedules after he had been grilled at the § 341 creditors meeting.  Tully, 818 F.2d at 110-11.  While the First Circuit recognized that the debtor's first filing may have been done in haste, his later amended filings were done at his leisure and fell well short of the required disclosure.  Id. at 111.  That pattern strongly supported a finding of knowingly and fraudulently making a false oath.  Id.

The summary judgment record establishes that the Debtors appreciated the importance of the stripped items given the acrimonious dispute over the log home construction project, they considered the items their property, and they placed the items in a storage unit rented by a third party.  But, several months later when the Debtors filed for bankruptcy, they failed to list the items in storage.  A little over a month later, when the Debtors filed amended schedules and a statement of financial affairs, they again failed to list the items in storage.  Finally, after being sued in this adversary proceeding, the Debtors then amended their schedules again to add the items in storage.  This pattern strongly suggests that the Debtors did not simply forget about that property.  Nothing in the summary judgment record raises any dispute over this circumstantial evidence.

Therefore, the summary judgment record contains undisputed evidence that supports a finding that the Debtors had the requisite intent to hinder, delay, or defraud Lassonde. Accordingly, summary judgment on Count VI is granted.

### G.  Count VII – § 727(a)(2)(A) – Transfer or removal of property within one year of the bankruptcy petition

In Count VII, Lassonde contends that the Debtors should be denied a discharge under

§ 727(a)(2)(A) because they also failed to disclose $20,000 in tax refund and tax stimulus checks, the transfer of a wood boiler, the transfer of two snowmobiles and a trailer, the transfer of a boat and trailer, the transfer of a sander, and four to five guns.

Again, the fourth element of § 727(a)(2)(A) is the only real dispute here—whether the Debtors intended to hinder, delay, or defraud Lassonde.  The Court looks to the circumstantial evidence in the summary judgment record to show any indicia of fraudulent intent.  In doing so, the Court considers the Debtors' "whole pattern of conduct."  <u>Menotte v. Moore (In re Moore)</u>, 375 B.R. 696, 701 (Bankr. S.D. Fla. 2007).

The summary judgment record contains undisputed evidence regarding the tax refund and tax stimulus checks.  The Debtors failed to initially disclose several assets on their bankruptcy petition.  First, they failed to disclose a $10,302 tax refund for their 2007 taxes that they received in July or August 2008, only one or two months before they filed for chapter 7.  Second, when questioned about the refund at the § 341 meeting, Mr. Stanton said he owed Melinda Lambert $15,000 to $20,000, but that debt was not disclosed on their schedules.  The Debtors also failed to disclose that they transferred the $10,302 refund to Lambert as payment for moving expenses.  Third, at his Rule 2004 examination, Mr. Stanton was asked about the payments or debts to Lambert that he should have disclosed on the original bankruptcy schedules (and if he still owes Lambert money), and the transfers of the snowmobiles, boat, trailers, and other items.  In each instance, he was repeatedly evasive, noncommittal, or inconsistent with his answers.

In addition, Mrs. Stanton admitted in her Rule 2004 examination deposition that her husband "loves to litigate" and that he has a pattern of lying.[15]  Among other things, she said her

---

[15] <u>See</u> Pl.'s Ex. 25.

husband wanted to sue Lassonde for more money over the log home construction, even though Lassonde was willing to work with the Debtors to resolve issues.  She also admits that her husband lied to the chapter 7 trustee at the § 341 meeting because he was holding the $10,302 tax refund check in his possession, but he testified that he paid the refund money to Lambert for her moving services.  Although against her interest as a joint debtor in the underlying bankruptcy, Mrs. Stanton still candidly admits that her husband lied about several aspects of the case.  The summary judgment record discloses no challenge by Mr. Stanton to her statements.

The summary judgment record contains undisputed evidence to support the allegations in Count VII, including that the Debtors concealed the tax refunds with the intent to hinder, delay, or defraud the bankruptcy estate.  Accordingly, summary judgment on Count VII is granted.

### H.  Count VIII – § 727(a)(4)(A) – False oath

In Count VIII, Lassonde argues that the Debtors should be denied a discharge under § 727(a)(4)(A) because they made numerous false oaths in connection with their bankruptcy by lying about their tax refunds, the sale or transfer of a wood boiler, sander, snowmobiles, boat and trailers, and omitting from their schedules the household fixtures and appliances that they stripped from the log home.

Section 727(a)(4)(A) requires the Court to deny the debtor a discharge if "the debtor knowingly and fraudulently, in or in connection with the case made a false oath or account." The false oath must relate to a material fact.  Tully, 818 F.2d at 110.  As the First Circuit explained in Tully

> the very purpose of certain sections of the law, like 11 U.S.C. § 727(a)(4)(A), is to make certain that those who seek the shelter of the bankruptcy code do not play fast and loose with their assets or with the reality of their affairs. The statutes are designed to insure that complete, truthful, and reliable information is put forward

28

> at the outset of the proceedings, so that decisions can be made by the parties in
> interest based on fact rather than fiction. As we have stated, the successful
> functioning of the bankruptcy act hinges both upon the bankrupt's veracity and
> his willingness to make a full disclosure.  Neither the trustee nor the creditors
> should be required to engage in a laborious tug-of-war to drag the simple truth
> into the glare of daylight.

Id. at 110.  Lassonde's claim under this count is largely derivative of his claims under Counts VI

and VII.  In light of the Tully standard and for the reasons already explained above, the summary

judgment record contains undisputed evidence that the Debtors either lied about, failed to

disclose, or begrudgingly disclosed several assets and transfers in their bankruptcy case.[16]

Accordingly, summary judgment on Count VIII is granted.

### I. Count IX – § 727(a)(4)(A) – False oath and failure to disclose sale of real estate

In Count IX, Lassonde argues that the Debtors should be denied a discharge under

§ 727(a)(4)(A) because they failed to disclose Mrs. Stanton's March 2005 sale of her home in

Barnstead, New Hampshire, which netted her about $149,000 in proceeds.  The Debtors

admitted selling the real estate in their answer to Lassonde's complaint.  At their § 341 meeting,

however, the chapter 7 trustee asked the Debtors whether they had transferred any other assets

within the past four years and they said no.  Their answer was incorrect.  Mrs. Stanton sold her

property in Barnstead in March 2005.[17]  Perhaps by itself, not remembering this sale might only

suggest that the Debtors innocently forgot about it or thought that it fell outside the four-year

pre-bankruptcy window.  Coupled with their other conduct in this case, however, the Debtors'

---

[16]  Though Lassonde attributes much of the bad conduct in the state court case and in the Debtors' bankruptcy case to Mr. Stanton, Mrs. Stanton offers no evidence that she attempted to correct his lies at the § 341 meeting or to dispute Lassonde's allegations that she should also be denied a discharge for her husband's conduct.

[17]  See Pl.'s Compl., Ex. L.

29

failure to disclose this transfer of real estate sale strongly suggests that this false oath was knowing and fraudulent.  The summary judgment record contains no evidence which disputes the inaccuracy of the Debtors' responses or offers any explanation for the mistake.  Therefore, the record contains undisputed evidence to support a denial of the Debtors' discharge under § 727(a)(4)(A).  Accordingly, summary judgment on Count IX is granted.

## IV.  CONCLUSION

As the Superior Court aptly noted in its order, the Debtors' positions in this underlying dispute are like "a moving target, changing as the circumstances of the case change."  When the Debtors sought shelter under the Bankruptcy Code, they failed to come forward honestly and to fully and accurately disclose their financial affairs—either in their schedules, amendments, or in response to questions from creditors and the chapter 7 trustee.  That choice ultimately dooms their shot at bankruptcy.  To summarize, the Motion is granted in part and denied in part. The Court grants summary judgment on Counts III, IV, VI, VII, VIII, and IX and denies summary judgment on Counts I, II, and V.  This opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.  The Court will issue a separate order consistent with this opinion.

ENTERED at Manchester, New Hampshire.


Date:   February 8, 2010                          /s/ J. Michael Deasy
                                                  J. Michael Deasy
                                                  Bankruptcy Judge

30